UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC R. DOWLING,

                Plaintiff,

-against-

P.O. CHRISTIANA VENABLE; S.P.O.
KENNEDY; WITNESS CASTILLO,

                Defendants.

21-CV-5281 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is currently detained at the Anna M. Kross Correctional Facility on Rikers Island, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights during his parole revocation proceedings. By order dated July 14, 2021, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the following reasons, the Court dismisses this action for failure to state a claim, with 30 days' leave to replead.

## STANDARD OF REVIEW

      The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "formulaic recitation[s] of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff originally filed his complaint in the Eastern District of New York. (ECF 1, filed on May 4, 2021.) By order dated June 14, 2021, the Eastern District transferred the action to this Court without considering the merits of Plaintiff's complaint or his request to proceed IFP. (ECF

4, at 2.) Plaintiff names as Defendants Parole Officer (P.O.) Venable, Special Parole Officer (S.P.O.) Kennedy, and "Witness" Castillo.[1] (ECF 1, at 1.)

The following allegations are taken from the complaint: on March 22, 2021, at 11:00 a.m., Plaintiff's parole officer, Venable, arrested Plaintiff for a parole violation.[2] (*Id.* at 3-4.) On March 25, 2021, at 3:00 p.m., Plaintiff received his "final hearing" paperwork.[3] (*Id.* at 4.) Plaintiff alleges that, according to New York State procedures, Venable was required to serve the paperwork within 72 hours of the arrest. (*Id.* at 3.) Plaintiff further alleges that, because the parole violation warrant "has not been lifted" and he has not been released, he has suffered "mentally . . . thinking the law [would] do[ ] the rightful thing." (*Id.* at 4.)

Plaintiff requests to have "[his] warrant lifted or [a] lawsuit due to unlawful imprisonment" and to be released. (*Id.* at 5.)

## DISCUSSION

Because Plaintiff alleges that Defendants violated his federal constitutional rights, the Court construes Plaintiff's allegations as asserting claims under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

---

[1] Plaintiff names Venable, Kennedy, and Castillo in the caption of the complaint but does not name Kennedy in the "Defendants" section of the complaint. In light of Plaintff's *pro se* status, the Court construes the complaint as asserting claims against all three Defendants.

[2] Plaintiff does not specify his parole violation charges.

[3] Plaintiff does not specify who served him his final hearing paperwork, but presumably it was Venable.

A.     **Claims against S.P.O. Kennedy and Witness Castillo**

To state a claim under section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Here, Plaintiff does not allege any facts describing how S.P.O. Kennedy or Witness Castillo were personally involved in the events underlying his claims. Plaintiff does not even reference these two Defendants in the body of the complaint. The Court therefore dismisses Plaintiff's claims against Kennedy and Castillo for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

B.     **Claims against P.O. Venable**

Plaintiff alleges that P.O. Venable violated his federal constitutional rights by failing to serve him his parole revocation hearing paperwork in time. Since Venable is a state official, the Court considers whether she is entitled to some degree of immunity from section 1983 damages liability for her actions. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated

the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

Generally, state officials, such as parole officers, have absolute immunity for "judicial acts" and "acts that are prosecutorial in nature." *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998). However, when they perform acts that are "administrative or investigatory in nature," they only have qualified immunity, meaning that they are shielded from liability only insofar as their conduct does not violate "clearly established constitutional norms of which an objectively reasonable person should have been aware." *Id.* at 110-13. Therefore, parole officers receive absolute immunity for their decisions to "grant, deny, or revoke parole," which are judicial tasks, as well as for their actions in "initiating parole revocation proceedings" and "presenting the case for revocation to hearing officers," which are prosecutorial acts. *Id.* at 111-12. But they receive only qualified immunity for preparing violation reports and recommending an arrest warrant. *Id*. at 112.

Here, it is unclear which type of immunity would apply to Venable because Plaintiff does not provide facts about Venable's involvement in his parole revocation proceedings other than alleging that she served him late. In any event, as discussed below, even if Venable is only entitled to qualified immunity, Plaintiff fails to allege facts sufficient to suggest that Venable violated his "clearly established" constitutional rights.

5

C.     **Challenge to Parole Revocation Proceedings**

Plaintiff brings this action challenging his parole revocation proceedings. The gravamen of Plaintiff's complaint is that Venable failed to serve him his final hearing paperwork[4] within 72 hours of the arrest. Because Plaintiff alleges that Venable failed to follow state procedures, the Court construes the complaint as asserting a due process claim under the Fourteenth Amendment.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

The Court considers first the existence of a liberty interest. The Supreme Court has held that the revocation of parole implicates a protectable liberty interest. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others . . . [T]he liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."); *see also Suce v. Taylor*, 572 F. Supp. 2d 325, 334 (S.D.N.Y 2008) ("[T]he Due Process Clause of the Fourteenth Amendment applies to the revocation of parole.")

---

[4] Generally, after issuance of a parole violation warrant, a parolee's parole revocation proceedings begin with a preliminary hearing. Plaintiff does not specify why he was served paperwork for a final hearing as opposed to a preliminary hearing. However, the Court notes that state law allows the parolee to waive the right to a preliminary hearing. *See* N.Y. Exec. Law § 259-i(3)(d); N.Y. Comp. Codes R. & Reg. tit. 9, § 8004.3.

(citing *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 9 (1979)). However, the liberty interest is a limited one: "not . . . the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480.

Once it is determined that a liberty interest is implicated, the question remains what process is due before a plaintiff may be deprived of that interest. The Supreme Court in *Morrissey* outlined what due process requires in the parole revocation setting. A preliminary hearing should be conducted "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest." *Id.* at 485. "The parolee should be given notice that the [preliminary] hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged." *Id.* at 487. "There must also be an opportunity for a [final parole revocation] hearing" conducted "within a reasonable time after the parolee is taken into custody." *Id.* at 488. The "minimum requirements of due process" for the final hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body . . . and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. "[T]he Supreme Court has not articulated any additional due process requirements for parole revocation proceedings." *Suce*, 572 F. Supp. 2d, at 334.

Here, Plaintiff's allegations can be construed as challenging the timeliness of the "written notice of the claimed violations of parole" in accordance with *Morrissey*, 408 U.S. at 489. Under New York State parole procedures, N.Y. Exec. Law § 259-i(3)(c)(iii), an alleged parole violator

7

must be given notice of a preliminary parole hearing within three days of a warrant's execution.[5] The constitutional due process requirements laid out in *Morissey* contain no equivalent three-day rule. To the extent that *Morissey* specifies any timing constraints of parole revocation proceedings, those constraints only concern the timeliness of the hearings rather than notice of the hearings. *See Morissey*, 408 U.S. at 485, 488. In interpreting *Morissey*'s notice requirement and determining what kind of notice is "sufficient to allow the [parolee] to prepare to defend against the charges" at the parole revocation hearings, the Second Circuit has, therefore, focused only on the content rather than the timing of the hearing notice, finding the notice constitutionally sufficient where it identifies the condition allegedly violated and describes the basic underlying facts of the alleged violation. *See United States v. Chatelain*, 360 F.3d 114, 121 (2d Cir. 2004); *see also Miller v. Hadden*, 811 F.2d 743, 747 (2d Cir. 1987) ("[D]ue process requires that a parolee threatened with parole revocation receive notice of the charges against him and the factual basis for those charges."); *U.S. ex rel. Carson v. Taylor*, 540 F.2d 1156, 1160 (2d Cir. 1976) (finding due process violation when the notice given to plaintiff failed to include one of the parole violation charges against him).

Plaintiff does not allege that Venable failed to provide him with notice of his parole violation hearing. Nor does Plaintiff allege any facts suggesting that the notice he received

---

[5] There is some confusion about whether the execution of the warrant and the arrest of the parolee are treated as the same event. *Compare Parker v. Chin*, No. 04-CV-3901, 2006 WL 1379613, at *3 (S.D.N.Y. May 18, 2006) ("The warrant may be executed, i.e., the parolee may be arrested, by any parole officer, police officer, or any other officer authorized to serve criminal process."), *with People ex rel. Dolberry v. Warden, Rikers Island Corr. Facility*, 16 Misc.3d 1126(A), 2007 WL 2376163, at *1 (N.Y. Sup. Ct. 2007) ("[Plaintiff] initially claims that he did not receive a written notice of his right to a preliminary parole hearing within 72 hours of his arrest . . . That claim is unavailing. [N.Y. Exec. Law § 259-i(3)(c)(iii)] requires only that the alleged violator be given notice of the preliminary hearing within three days of execution of the parole warrant.").

inadequately advised him of the charges against him and the factual basis for those charges. Because Plaintiff fails to allege any facts suggesting a denial of the constitutional due process requirements laid out in *Morissey*, he fails to state a due process claim under the Fourteenth Amendment. Rather his claim raises only a state law issue.[6] The violation of state law, without more, does not give rise to a claim under section 1983. *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983."); *e.g.*, *Davis v. N.Y. State Div. of Parole*, No. 07-CV-5544, 2008 WL 3891524, at *5 (S.D.N.Y. Aug. 20, 2008) ("[A] claim of a violation of a state law procedural requirement does not give rise to a section 1983 claim in the absence of a constitutional violation."); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2003) ("Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (internal quotation omitted); *see also Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures.").

The Court dismisses Plaintiff's claims for failure to state a claim on which relief may be granted. But in light of Plaintiff's *pro se* status, the Court grants him 30 days' leave to file an amended complaint to state any facts suggesting that his due process rights were violated during his parole revocation proceedings.

---

[6] State court cases discussing the three-day notice rule do not appear to treat it as the equivalent of a 72-hour notice rule. *See, e.g.*, *People ex rel. Atkinson v. Warden, Rikers Island Corr. Facility*, 607 N.Y.S. 2d 256, 257 (N.Y. App. Div. 1994) (holding that when the warrant was executed on October 22, 1992, the three day period ended on Sunday, October 25, 1992 and was extended to the following business day, October 26, 1992); *People ex rel. Thompson v. Warden, Rikers Island Corr. Facility*, 839 N.Y.S.2d 47, 48 (N.Y. App. Div. 2007) (speaking in terms of the hearing notice being "one day late" as opposed to several hours late).

D.     **Section 1983 as Habeas**

To the extent Plaintiff seeks release from custody, he may not challenge the validity of his conviction or obtain release from custody in a section 1983 action; instead, he can only obtain such relief by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (noting that writ of *habeas corpus* is sole remedy for prisoner seeking to challenge the fact or duration of his confinement)). A state prisoner may not circumvent the exhaustion requirement for *habeas corpus* relief by requesting release from custody in a civil action. *Preiser*, 411 U.S. at 489-90.

The same exhaustion requirements apply when a plaintiff is a state prisoner challenging his or her parole revocation. *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 275, 278 (2d Cir. 2003) (holding that a state prisoner challenging his or her parole revocation must file under 28 U.S.C. § 2254 and rejecting plaintiff's argument that section 2254 is not applicable to his petition because his custody is pursuant to an order of the parole board rather than a state court); *see, e.g.*, *Robinson v. Atkinson*, No. 03-CV-5176, 2004 WL 1798129, at *2-3 (S.D.N.Y. Aug. 5, 2004) (same); *U.S. ex rel. McNeil v. Schubin*, 353 F. Supp. 166, 167-68 (S.D.N.Y. 1973) (dismissing plaintiff's *habeas corpus* petition to review his parole revocation because plaintiff failed to exhaust his state remedies under 28 U.S.C. § 2254).

The Court declines to construe this section 1983 complaint as a *habeas corpus* petition because the petition does not suggest that Plaintiff has exhausted his available state remedies in accordance with 28 U.S.C. § 2254(b) and (c).[7] Should Plaintiff seek release from custody, he

---

[7] Plaintiff should note that under the Antiterrorism and Effective Death Penalty Act of 1996, which modified the *habeas corpus* statutes, a person in state custody must generally file a section 2254 petition within one year from the latest of four benchmark dates: (1) when the

may file a petition for a writ of *habeas corpus* once all available state remedies have been exhausted.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff 30 days' leave to submit an amended complaint.

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated:   July 26, 2021
         New York, New York

                                           /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              Chief United States District Judge

---

judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the constitutional right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d).